**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**RGINALD JACKSON (#764746)**  CIVIL ACTION NO.

**VERSUS**  22-1037-SDD-EWD

**E. DUSTIN BICKHAM, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 14, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RGINALD JACKSON (#764746) | CIVIL ACTION NO. |
| VERSUS | 22-1037-SDD-EWD |
| E. DUSTIN BICKHAM, ET AL. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Complaint of Plaintiff Reginald Jackson ("Jackson"), who is representing himself and who is confined at the Dixon Correctional Institute ("DCI") in Jackson, Louisiana. Based on the screening required by 28 U.S.C. § 1915A, and the authority given the Court under 28 U.S.C. §1915(e), it is recommended that Jackson's claims be dismissed with prejudice for failure to state a claim and that this Court decline to exercise supplemental jurisdiction over potential state law claims.

### I. BACKGROUND

Jackson filed this suit on December 16, 2022 against E. Dustin Bickham, Daniel LaFleur, Laura Allen, and John Doe (collectively "Defendants"), alleging that Defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[1] Jackson seeks declaratory, injunctive, and monetary relief.[2]

### II. LAW & ANALYSIS

#### A. Standard of Review

This Court is authorized to dismiss a claim by a prisoner against a governmental entity or an officer or employee of a governmental entity, or by any other plaintiff who has been granted IFP status, if the claim is frivolous, malicious, or fails to state a claim upon which relief may be

---

[1] R. Doc. 1.
[2] R. Doc. 1, pp. 21-22.

granted.³ The screening process is intended to give the court the ability to separate those claims that may have merit from those that lack a basis in law or in fact. Dismissal of any claim that does not pass court screening may be made before service of process or before any defendant has answered. Because Jackson is an inmate, and all Defendants are alleged to be employees of DCI, Jackson's suit is subject to the screening process.

To determine whether a complaint fails to state a claim under §§ 1915(e) and 1915A, courts apply the same standard used for dismissal under Fed. R. Civ. Proc. 12(b)(6).⁴ This means that the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.⁵ "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"⁶ "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."⁷ For a complaint to survive dismissal, it must contain enough factual information to raise a reasonable expectation that discovery will provide evidence of each element of the plaintiff's claim.⁸

While the screening process does give the court the rare power to 'pierce the veil' of the factual allegations,⁹ pleaded facts that are merely improbable or strange are not frivolous for

---

³ 28 U.S.C. §1915(e) provides for dismissal of claims that are frivolous, malicious, or fail to state a claim where the plaintiff was granted leave to proceed *in forma pauperis* ("IFP"). 28 U.S.C. §1915A provides for dismissal of claims by prisoners against a governmental entity or employee of a governmental entity for the same reasons regardless of the pauper status of the plaintiff. Jackson was granted IFP status on January 6, 2023, so both statutes apply. R. Doc. 11.
⁴ *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (recognizing that the standards for determining whether a complaint fails to state a claim for relief are the same under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A and Fed. R. Civ. P. 12(b)(6).
⁵ *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
⁶ *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
⁷ *Id.*
⁸ *AGEM Management Services, LLC v. First Tennessee Bank Nat. Ass'n*, 942 F.Supp.2d 611, 617 (E.D. La. April 25, 2013), citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 255-57 (5th Cir. 2009).
⁹ *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

purposes of screening.[10] A claim is factually frivolous only if the alleged facts are "clearly baseless, a category that includes allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[11] A claim is also subject to dismissal if it has no legal basis, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."[12]

### B. Jackson Cannot State a Claim Under the Fourteenth Amendment Based on His Dissatisfaction with the Grievance Process[13]

Jackson complains that he suffered a violation of his due process rights under the Fourteenth Amendment because his administrative grievance was improperly denied as meritless by Defendant Laura Allen.[14] Jackson has no right to have his prison grievance proceedings properly investigated, handled, or favorably resolved,[15] and there is no procedural due process right in such a claim. As explained in *Geiger v. Jowers,* there is no federally protected interest in having a prison grievance resolved to the prisoner's satisfaction:

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.[16]

---

[10] *Id.* at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).
[11] *Denton*, 504 U.S. at 33, citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).
[12] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).
[13] Jackson's references to alleged violations of Louisiana Department of Public Safety and Corrections policies (for example, in not obtaining Jackson's prior medical records), does not state a federal claim under § 1983, because those policies do not create federally protected rights. *Lewis v. Secretary of Public Safety and Corrections*, 870 F.3d 365, 369 (5th Cir. 2017) ("The LaDPSC and CCA internal rules and regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (internal citations omitted).
[14] R. Doc. 1, pp. 10 & 12.
[15] *Mahogany v. Miller,* 252 Fed.Appx. 593, 595 (5th Cir. 2007).
[16] 404 F.3d 371, 373-74 (5th Cir. 2005) (internal citations omitted).

3

Therefore, any federal claim that Jackson attempts to bring based on the handling or disposition of his administrative grievance lacks a basis in law and should be dismissed.

### C. Jackson Has Not Stated an Eighth Amendment Claim for Deliberate Indifference to a Serious Medical Need Against Any Defendant[17]

To establish liability for deliberate medical indifference, an inmate plaintiff must show "subjective recklessness as used in the criminal law."[18] The claim must meet both an objective test and a subjective test.[19] The objective test requires plaintiffs to show that the alleged constitutional deprivation was, objectively, "sufficiently serious."[20] To meet the subjective test, plaintiffs must show that prison officials acted with a "sufficiently culpable state of mind."[21] Whether the plaintiff has received the treatment or accommodation that she desires is not enough to state a claim for deliberate indifference unless there are exceptional circumstances.[22] Even negligence, neglect, unsuccessful treatment, or medical malpractice, will not generally establish deliberate medical indifference.[23] Rather, the deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct" that would clearly show a complete disregard for any serious medical needs.[24]

---

[17] For thoroughness, some treatment that was rendered after the filing of the relevant grievance is discussed, but any complaints regarding medical treatment, or the lack thereof, after June 6, 2022 would likely be subject to dismissal for failure to exhaust. Additionally, it is unclear whether Jackson is trying bring a claim for retaliation against Allen. To the extent he is, that claim fails. Jackson alleges that Allen spoke to him about his grievance, and Allen told Jackson, "she was not afraid of a lawyer." R. Doc. 1, p. 16. Jackson states that he viewed this as retaliatory. However, he does not identify what right he was attempting to exercise, and the fact that Allen stated she was not afraid of a lawyer is not a retaliatory act. *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006).
[18] *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).
[19] *Id*. at 837.
[20] *Id.* at 834, quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).
[21] *Id.*
[22] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted).
[23] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).
[24] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

4

Overall, Jackson complains that when he has told DCI medical personnel that he was diagnosed with medical conditions in the past and has requested specific treatment, medications, or diets to address those conditions, medical personnel have not accepted Jackson's representations and have not always followed his treatment requests. However, a plaintiff's self-diagnosis does not establish the existence of a serious medical need and requiring diagnostic tests to be performed to verify that a condition exists does not support a finding of deliberate indifference.[25]

Jackson's medical complaints seem to mostly relate to sleep apnea and vertigo.[26] Jackson specifically complains that he was diagnosed with sleep apnea and vertigo in 2020 and appears to question why he had to wait to be diagnosed again with these conditions by medical professionals at DCI before receiving treatment.[27] In response to Jackson's complaints of sleep apnea, he was scheduled for a sleep study at the University Medical Center New Orleans on June 24, 2022, but he refused to attend the sleep study.[28] Jackson also admits that when he spoke with Defendant Laura Allen regarding his CPAP machine, she replied "how are we supposed to issue a CPAP machine to you, when you refused a trip for a sleep study, on or about the 24th day of June 2022?"[29] This information does not show that Jackson's medical complaints were ignored—rather, it appears Defendants attempted to treat Jackson's complaints but were unable due to Jackson's non-compliance.[30] Jackson also contends that medical officials at DCI should have requested medical

---

[25] *See Hunt v. Barry*, No. 15-152, 2017 WL 1100721, at *4 (E.D. Tex. March 24, 2017) ("[t]he fact that medical professionals may not believe a patient's self-diagnosis does not show deliberate indifference to serious medical needs"); *Cf. Robles v. Glenn*, No. 06-256, 2007 WL 1655335, at *4 (E.D. Tex. June 5, 2007) (bare assertion of a serious medical condition is insufficient to demonstrate a serious medical need, and a prisoner's self-diagnosis alone will not support a medical conclusion).
[26] Jackson has specifically requested damages for the denial of a CPAP machine. R. Doc. 1, p. 22. Further, his Motion for Temporary Restraining Order (R. Doc. 3) only makes requests relative to a CPAP machine, as well as use of a wheelchair, but, as noted herein, Jackson has been prescribed use of a wheelchair.
[27] R. Doc. 1, p. 17.
[28] R. Doc. 1-1, pp. 2 & 16.
[29] R. Doc. 1, p. 16.
[30] Jackson says he refused to attend the scheduled sleep study because he had legal mail callout the same day and "court or court matters take precedence over other prison callouts or trips, unless its life or death situations," (R. Doc. 1, p. 17) which calls into question the seriousness with which he views his sleep apnea.

records from a prior sleep study that was done, rather than making him do another sleep study. As noted above, requiring diagnostic tests, and not blindly accepting a plaintiff's self-diagnosis or self-reported condition does not amount to deliberate indifference. Further, the failure to request medical records does not amount to deliberate indifference,[31] especially where, as here, prison officials attempted to conduct their own diagnostic testing to determine an appropriate course of treatment.[32] Defendants have attempted to diagnose Jackson's claim of sleep apnea but have been unable because he did not cooperate. Defendants' refusal to blindly prescribe a CPAP machine to Jackson without testing to confirm his medical condition does not show deliberate indifference.[33]

As to his complaints of vertigo, Jackson says that he was treated at the infirmary on May 10, 2022 after a "vertigo incident."[34] It appears that Jackson fell due to his vertigo around May 30, 2022 but did not report any injuries.[35] On June 5, 2022, Jackson made another sick call complaining of vertigo; Dr. LaFleur ordered meclizine to treat Jackson.[36] Jackson notes that he did not actually receive his medication for vertigo until approximately June 8, 2022.[37] Jackson's statements and the documents he has submitted to the Court show that he was treated for his vertigo, and it does not appear that Jackson suffered any harm, much less substantial harm, as a result of the less than one month delay in receiving his vertigo medication.[38] It also appears that Jackson has continued to be treated for his vertigo and further examinations have been ordered to

---

[31] *See Thompson v. Ackal*, No. 15-2288, 2016 WL 5478093, at *3-4 (W.D. La. Aug. 25, 2016) (failure to request medical records, which would have revealed prior suicide attempt, was not deliberate indifference but rather, only rose to the level of negligence).)
[32] Even though Jackson's refused to go to his first scheduled sleep study, on November 3, 2022, DCI officials ordered another sleep study. R. Doc. 13, pp. 5-6.
[33] It appears Jackson blames his untreated sleep apnea for his short-term memory loss (R. Doc. 1, p. 17), but as stated above, Jackson has not stated a claim with respect to indifference related to his treatment for sleep apnea, so he cannot state a claim for the related claim of short-term memory loss.
[34] R. Doc. 1, p. 18.
[35] R. Doc. 13, p. 8; R. Doc. 1-1, p. 2 (Jackson reported no injuries from fall).
[36] R. Doc. 1-1, p. 2.
[37] R. Doc. 1, p. 18.
[38] R. Doc. 1, p. 18.

uncover the root cause of this condition.[39]  Jackson also had a follow-up visit with another doctor via Zoom on February 22, 2023.[40]  This shows that his complaints of vertigo have been, and are being, actively treated, not ignored.

The Complaint, supplements, and other documents filed by Jackson show additional medical treatment received by Jackson for various conditions—some related and some unrelated to those focused on in his Complaint.  For example, Jackson had a test for kidney function and a colonoscopy at the University Medical Center New Orleans around July 7, 2022.[41]  Jackson also admits that he currently uses a wheelchair to "get around."[42]  Even considering the hurdles and delays Jackson experienced in getting a wheelchair, it does not appear that he suffered substantial harm as a result of the delay.[43]  Jackson also makes the conclusory allegations that he needs a "renal diet" for a previous diagnosis of diverticulosis,[44] but Jackson has failed to describe what ailments he is suffering because he is not on a renal diet, and supplemental information filed by Jackson demonstrates that he has been prescribed a special low sodium diet from February 15, 2022 through February 15, 2023.[45]  Jackson's allegations match the facts about his medical treatment contained in the first step response to his administrative grievance.[46]

---

[39] On February 9, 2023, Jackson admits he had a full body CAT Scan at the University Medical Center New Orleans that revealed Meniere's disease as the cause of Jackson's vertigo. R. Doc. 13, p. 7.
[40] R. Doc. 12.
[41] R. Doc. 1, p. 17.
[42] R. Doc. 1, p. 18.
[43] R. Doc. 1, pp. 18-19.  Although Jackson alleges that he had to turn his wheelchair in at some point and was borrowing wheelchairs to get around in September (R. Doc. 13, p. 13), he has also submitted documentation that he was prescribed the wheelchair again from November 3, 2022 through May 3, 2023. R. Doc. 13, p. 19. Jackson has not alleged any harm, much less substantial harm from any delay in getting a wheelchair. Though Jackson notes that he has skipped some meals because he sometimes does not have a wheelchair to get around, he has not indicated he has suffered substantial harm, such as substantial weight loss, from missing a few meals. R. Doc. 1, p. 20.
[44] R. Doc. 1, p. 20.
[45] R. Doc. 13, p. 18.
[46] Though Jackson states that Defendant Allen "prepared a false report" (R. Doc. 1, p. 12) (presumably the information in the first step response), it is unclear what information Jackson alleges is inaccurate, and the information contained in the first step response about his medical treatment aligns with the facts alleged in the Complaint and the documents Jackson attaches.  *See Lewis v. Guillot*, 583 Fed. Appx. 332, 333 (5th Cir. 2014), citing *Collins v. Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 1999) (in determining whether a complaint fails to state a claim under 28 U.S.C. § 1915(e)(2)(b), the court is permitted to consider attachments to the complaint).

On May 13, 2022, Jackson made a sick call complaining of left ear pain, short term memory loss, sleep apnea, and a sore throat.[47] He was prescribed an antihistamine and sore throat lozenges.[48] On May 16, 2022, Jackson made another sick call of continuing ear pain and a cough.[49] The nurse instructed Jackson to continue taking his prescribed medications and added another medication.[50] On May 26, 2022, Jackson made another sick call; he was examined for ear pain.[51] On May 31, 2022, Jackson made another sick call complaining of vertigo and sleep apnea.[52] Jackson said he fell but reported no injuries from the fall.[53] Jackson's blood pressure was high, so he was given his blood pressure medication, which he had failed to take earlier in the day and was monitored by medical staff.[54] A sleep study was ordered for Jackson by Dr. LaFleur, and Jackson was released from the infirmary when he was stable.[55] A wheelchair was also ordered for Jackson.[56]

On June 1, 2022, Jackson presented to the infirmary requesting a wheelchair and to be placed on a special diet.[57] Allen treated Jackson, informed him that only a doctor or nurse practitioner could change his diet, and reissued a wheelchair to Jackson.[58] On June 5, 2022, Jackson made another sick call complaining of vertigo; Dr. LaFleur ordered meclizine to treat Jackson.[59] On June 7, 2022, Jackson presented to the infirmary in a wheelchair complaining of memory loss and head spinning.[60] Jackson reported having trouble maintaining his possessions;

---

[47] R. Doc. 1-1, p. 1.
[48] R. Doc. 1-1, p. 1.
[49] R. Doc. 1-1, p. 1.
[50] R, Doc. 1-1, p. 1.
[51] R. Doc. 1-1, pp. 1-2.
[52] R. Doc. 1-1. p. 2.
[53] R. Doc. 1-1, p. 2.
[54] R. Doc. 1-1, p. 2.
[55] R. Doc. 1-1, p. 2.
[56] R. Doc. 1-1, p. 2.
[57] R. Doc. 1-1, p. 2.
[58] R. Doc. 1-1, p. 2.
[59] R. Doc. 1-1, p. 2.
[60] R. Doc. 1-1, p. 2.

8

for example, Jackson had forgotten his wheelchair in the bathroom and walked back to his bed without it.[61] Jackson requested a CPAP machine and for a sleep study to be done. The nurse ordered Jackson to take meclizine as ordered for vertigo.[62] The June 7, 2022 sick call was reviewed by the doctor, and it was noted that Jackson had pending appointments for a sleep study.[63] On June 24, 2022, Jackson signed a refusal for a trip to the University Medical Center New Orleans where he was to have his sleep study done.[64]

The above summary of medical treatment shows that Jackson has been treated. Indeed, every interaction noted by Jackson with Dr. LaFleur indicates treatment, not the lack of treatment. Of the few interactions noted with Allen, Jackson mostly appears to take issue with the handling of his administrative grievance by Allen, but he also notes that at one point Allen denied him a wheelchair "because she had already assigned him a wheelchair the previous day."[65] Allen did not refuse to treat him; she assigned him a wheelchair, and it appears there was an administrative issue with Jackson getting the wheelchair. Further, as noted above, Jackson now admits to having a wheelchair and has not alleged any substantial harm because of any delay in receiving the wheelchair for use, so he cannot state a claim for deliberate indifference. Overall, Jackson has been dissatisfied with the treatment he has received, but dissatisfaction with treatment does not state a claim for deliberate indifference to a serious medical need.[66] Further, Jackson did not suffer substantial harm because of the delay in getting either his vertigo medication or his wheelchair. Overall, it appears Jackson would like to be able to force the medical providers at DCI to give him whatever treatments, diets and/or medications he thinks are appropriate. Jackson is not entitled to

---

[61] R. Doc. 1-2, p. 2.
[62] R. Doc. 1-1, p. 2.
[63] R. Doc. 1-1, p. 2.
[64] R. Doc. 1-1, p. 2.
[65] R. Doc. 1, p. 19.
[66] *Winston v. Stacks*, 243 Fed.Appx. 805, 807 (5th Cir. 2007) ("dissatisfaction with the treatment he received is insufficient to state a constitutional claim.").

9

self-diagnose or to order treatments for himself, and the failure of medical staff to comply with his medical demands is not deliberate indifference.[67] Because Jackson has failed to state a claim for deliberate medical indifference, these federal claims should be dismissed.[68]

### D. Jackson's Supervisory Claims Fail

Supervisory officials may be held liable under § 1983 only if they participate in acts that cause constitutional deprivation or establish unconstitutional policies that cause the plaintiff's injury.[69] An allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* does not state a claim under § 1983.[70] Further, if the supervisory official does not personally participate in an alleged constitutional violation, an inmate plaintiff must be able to show that he was deprived of his constitutional rights because an employee applied the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty imposed by state law.[71] To establish liability based on a policy, the policy must be so deficient that it can be seen as the cause of the constitutional violation.[72]

---

[67] *See Hunt v. Barry*, No. 15-152, 2017 WL 1100721, at *4 (E.D. Tex. March 24, 2017) ("[t]he fact that medical professionals may not believe a patient's self-diagnosis does not show deliberate indifference to serious medical needs").

[68] Though a *pro se* plaintiff should ordinarily be given a chance to amend his or her complaint before dismissal, leave to amend is not necessary if amendment would be futile. Here, Jackson should not be allowed leave to amend to attempt to state a claim because any amendment consistent with the facts alleged would be subject to dismissal. *Wiggins v. Louisiana State University—Health Care Services Division*, 710 Fed. Appx. 625, 627 (5th Cir. 2017) (though ordinarily a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed, granting leave to amend is not necessary if the plaintiff has already pleaded her best case or if an amendment would be futile). Further, Jackson has filed several other motions, memoranda, and supplements into the record that have been considered. *See, e.g.*, R. Docs. 3, 4, 8, 9, 12, & 13. Thus, leave to amend to provide additional facts to support Jackson's claims is not warranted.

[69] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

[70] *See Iqbal*, 556 U.S. at 676 (2009), citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").

[71] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

[72] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

10

Jackson's claims against any Defendants[73] (or others)[74] for supervisory liability also fail because he has not shown an underlying constitutional violation, which is a prerequisite to a supervisory liability claim based upon allegations that a supervisory official established policies, practices, or customs alleged to be the driving force behind the constitutional violation.[75]

### E. Exercise of Supplemental Jurisdiction Should be Declined

Finally, to the extent that Jackson's allegations may be interpreted as a request for this Court to exercise supplemental jurisdiction over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[76] District courts are given "wide latitude" in resolving state law claims,[77] and "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial."[78] Having recommended dismissal of Jackson's federal claims, it is appropriate to decline supplemental jurisdiction over any potential state law claims.

---

[73] R. Doc. 1, pp. 11-12 (alleging that each Defendant was "grossly negligent in supervising subordinates, who committed the wrongful acts and exhibited deliberate indifference to the rights of plaintiff….).

[74] Though not named as a Defendant, Jackson also names James LeBlanc, Secretary of the Department of Corrections, in his prayer for relief. R. Doc. 1, p. 22. To the extent Jackson intends to sue LeBlanc for "policies and practices that facilitate the denial of medical treatment," those claims would fail for the same reasons as the supervisory claims against the Defendants.

[75] *See Newsome-Goudeau v. Louisiana*, No. 17-909, 2020 WL 5665615, at *6 (W.D. La. Sept. 22, 2020) (underlying constitutional violation required to succeed on § 1983 claim)

[76] 28 U.S.C. § 1367.

[77] *See Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011), quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966).

[78] *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *see also Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989))).

## RECOMMENDATION

**IT IS RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over potential state law claims, that Jackson's federal claims be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. §§ 1915(e) and/or 1915A, and that this case be **CLOSED**.[79]

## ORDER

Considering the recommendation that all federal claims be dismissed and this case closed, **IT IS ORDERED** that Jackson's pending Motions[80] are **DENIED** without prejudice to reurging if the recommendation is not adopted.

Signed in Baton Rouge, Louisiana, on March 14, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[79] Jackson is advised that 28 U.S.C. § 1915(g) provides that, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [Proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." Should this Recommendation be adopted, the dismissal will count as a strike.

[80] R. Docs. 3, 4, 7, 8, & 9. Because the underlying claims are subject to dismissal, any related claim for injunctive relief would lack merit. Regarding the Motion to Appoint Counsel, the facts on which Jackson based his claims are clear, and legal counsel would not save Jackson's claims from dismissal as a matter of law on the facts alleged. Finally, the motion seeking summary judgment and the motion requesting that this Court stay issuing summary judgment are subject to denial. Jackson is not entitled to judgment in his favor because he has failed to state a claim.